All right. Is the appellant ready to proceed? And is the appellee ready to proceed? All right. The appellant, you may proceed. Is that Mr. Jackson? All right. Good afternoon. May it please the court. Intent has always been a crucial element. Criminal, civil law, intent to commit a crime, intent to defraud someone. In this case, we're talking about intent to waive a known right. In the underlying case, my client was denied a jury trial on the question of Wells Fargo Bank's intent to waive a prior acceleration of a mortgage loan. The consequences of that are that if Wells Fargo did waive it, the statute of limitations for Wells Fargo to conduct a foreclosure would not apply. I'm sorry. I think I might have gotten that backwards. If Wells Fargo did waive the prior acceleration of the loan, the statute of limitations would not apply. If Wells Fargo did not waive the prior acceleration, the statute of limitations would apply. Intent has always been a question of fact for the jury if reasonable jurors could reach different conclusions based on the evidence presented. The district court in this case found that it could determine as a matter of law. However, if you go and look at the case of Warren, they made a crucial and fundamental error in this determination. While the facts are undisputed, reasonable jurors could reach different conclusions as to the effect of those facts. The underlying court citing to the Warren case out of this court made the determination that it could rule on the evidence presented. If you look at the Warren case, Warren relied on one piece of evidence that was before that court. The only question in Warren was whether or not one document submitted by the bank was sufficient evidence of the bank's intent to abandon the prior acceleration. There was no other evidence tending to show that the bank had no intent to abandon the prior acceleration in Warren. Fair to say your theory here is everybody agrees there was the original notice. And the problem is you have these subsequent documents that are essentially inkblots. They're ambiguous. They say different things. Is that sort of the core theory? That's exactly right. That standing alone, their evidence would be sufficient to show abandonment of acceleration. But if you look at all of the facts and circumstances, which has traditionally been the way you look at the question of intent when it comes to waiver, reasonable jurors could reach different conclusions. And I'll circle back. What do you mean standing alone they might have sufficient evidence? I thought the theory was you look at the various letters, and the letters basically talk out of both sides of their mouths. Well, that's exactly right. So there are several different. They say they're waiving acceleration, but then they say they're foreclosing. Well, they never come out right and say that they're waiving. Well, there's two questions here, and I want to make sure to separate these issues. They make two different arguments for waiver of the acceleration. The first one involves all of these mortgage statements, which they say request less than the accelerated amount due and also a notice of default. But if the court rules against them on those arguments for waiver, then they have a second argument which they stand on, which is the single letter which they say affected a statutory rescission of the acceleration. So what I've been talking about thus far has been on that first argument that they're making when it comes to whether the district court wrongly determined as a matter of law that there was no genuine issue of material fact with regard to whether these mortgage statements and this notice of default were abandonment of acceleration or constituted an intent. So correct me if I'm wrong. My understanding of the law is that if there's an evidence of abandonment of the acceleration, is that right? That is definitely some evidence of abandonment of acceleration. So I think we have that here. That's some evidence. But I know that your argument is there's other evidence that creates a fact issue with respect to the intent to abandon, right? Correct. Okay. So draw my attention to what that other evidence is. Yes, Your Honor. So after they accelerated, they sent four additional acceleration notices which were all accompanied by notices of foreclosure sale. None of those foreclosure sales took place. They sent five more notices of acceleration between April 2019 and June 2020. Importantly, those subsequent accelerations in 2019 and 2020 refer to and rely on a prior notice of intent to accelerate dated October 1st of 2015. Let me see if I can explain why this is important. Texas is clear you have to take two steps to accelerate a mortgage loan. You have to send a notice of intent to accelerate followed by a notice of acceleration. This court in the Rob case held that if abandonment of an acceleration occurs, in order to re-accelerate the loan, the lender has to send a whole new notice of default followed by a whole new notice of acceleration. The reason it's very important that the lenders reference the October 1st, 2015 notice of intent to accelerate in the 2019 and 2020 notices of acceleration is that they claim by that point they had already abandoned the acceleration which occurred on February 2nd, 2016. So the fact that they're referring to and relying on the previous notice of intent to accelerate going back to October of 2015 is evidence from which a reasonable juror could to abandon the February 2016 acceleration by sending the six mortgage statements and one notice of default between June of 2017 and April of 2020. And so to circle back to Boren for a second, Boren relied on a Texas Supreme Court case, G.T. Leach Builders LLC versus Sapphire V.P. LP. They relied on that Texas case to hold that waiver abandonment of acceleration could be determined as a matter of law when the facts were undisputed. I think the verbiage that they used was a little bit loose. It's not so much when the facts are undisputed that you can determine intent to abandon as a matter of law, but it's when reasonable jurors could not reach different conclusions based on those undisputed facts that you can determine abandonment of acceleration as a matter of law. And the G.T. Leach Builders case, that was actually a case involving an intent to arbitrate. And if you read that case, the Texas Supreme Court says, yes, we can determine intent to abandon as a matter of law. There wasn't any other evidence from which reasonable jurors could differ. And, yes, under those circumstances, you could determine it as a matter of law. But in these circumstances, given the talking out of both sides of their mouth, as you were implying earlier, Judge Ho, it has to go to the jury on the question of their intent to abandon. And, by the way, when I say abandon and waive, I use those terms interchangeably. The case is to make clear that either of those terms really refer to the same idea. Now, I'll turn my... Do you have a theory as to what, assuming your narrative, what's your theory on what the bank is doing? Is this a theory of incompetence, that they're fumbling around and not being clear? Or is this sort of a strategy of some kind? What's going on here, assuming your factual narrative? What the facts tend to show is that I don't think there are any facts that show that it's intentional, but the intent doesn't necessarily matter. Well, let me... Intent obviously matters. What they put in writing demonstrates their intent. But as was said by the Swoboda v. Aquin Loan Servicing Court out of the Intermediate Houston Court of Appeals, what is just as important is what the borrower is led to believe about the consequences of their default. Okay. But your point is not that the bank's playing a game to try to gain some sort of advantage. It's just, for whatever reason, they've just been terribly unclear. They've just been unclear. I think they produce these letters, and their servicing portfolios are so gigantic that they try to do one-size-fits-all type of communications. So what are the consequences, if you were hypothetically correct, what are the consequences for lenders? I take it they don't get the lien to enforce, but they can still recover through other means, wage garnishment, that sort of thing? The lien becomes unenforceable. The monetary instrument could theoretically still be enforced as an unsecured debt. So it's not as if – It's not a windfall. It's just they can't use the lien to enforce the debt. They have to go through other traditional means of recovery. Well, correct. Including to sell the house. But if your clients were to voluntarily sell the house, they could recover those proceeds, that kind of thing. That's right. This statute that we're dealing with, 16.035 of the Civil Practice and Remedies Code, it only deals with the lien. And there's actually a completely different statute of limitations for promissory notes. What was the borrower led to believe in this case? The borrower was led to believe that their loan continued to be accelerated for more than four straight years, including applicable tolling. And that is all that is required under Texas law for the lien to become void. They believe that their loan continued to be accelerated. But as a practical matter, this is a house we're talking about. Yes. And I got a mortgage on the house that I got to pay. So my real concern is, can I keep staying here? What do I got to do to keep this house? Right? I'm just trying to deal with this practically. Somebody knew they owed something that they needed to pay. So what led them to believe they didn't have to pay it? They didn't have to pay it when they were being asked to pay it. I'm just asking, you're saying they were led to believe something that wasn't accurate. What were they led to believe? They were certainly never led to believe they didn't have to pay, nor did they ever believe that they didn't ever have to pay. However, the law, the statutory law of Texas is clear that if you're led to believe your loan is accelerated, and the loan actually is accelerated for four straight years without a foreclosure or a suit for foreclosure, then the lien is just invalid. And that's where the statute of limitations and the policies behind the statute of limitations comes into play, the termination of stale claims. And importantly to my clients, to provide them the security and stability to the human affairs that they're entitled to. They don't want to be accelerated forever, nor does the law say they can be accelerated forever. They only have four years. And with the remaining time I have left in this particular presentation before I do my rebuttal later, I want to point to their statutory rescission argument. This is under Section 16.038 of the Civil Practice and Remedies Code. Their argument that they rescinded the acceleration under this particular provision fails for the primary reason that they included the rescission of acceleration language within a reacceleration of an already accelerated loan. Can you simply not do that under Texas law? Is that your view? You can't say, hey, I'm rescinding the prior acceleration and I'm simultaneously reaccelerating it. Is that just forbidden under the statute? And if so, what in the statute says that? I think it's forbidden under the statute because – What's the language in the statute that would forbid that? I mean, look, I'm not a banker. I mean, that seems like a strange thing to do. But I'm just asking whether it's illegal. Yeah, of course, Your Honor. The statute says that rescission or waiver of acceleration is effective if made by written notice of rescission or waiver. Well, so there is a written notice of rescission here. I mean, I can read it in the documents. Well, it's actually in a multi-page document titled Notice of Acceleration. Yeah, well, you know, I mean, documents are hard to understand sometimes. I get that. But, I mean, the language that they're rescinding the prior acceleration is there, right? It is in there. But my argument is even if you find that it technically satisfies the statute, which I don't believe it does, but even if it does, it leads to an absurd result. And that is that the loan can be perpetually accelerated all the way to maturity. So what is this, a 30-year mortgage or something, and they can keep accelerating it for 30 years? That's exactly right. That's what you would be holding if you upheld their interpretation. Well, but technically they can do that, right? The question is whether they did that here. I mean, they can accelerate, formally abandon, re-accelerate. They can keep doing that. The question is when they issued these documents that said both we're rescinding the acceleration and at the same time, as I understand it, we're also scheduling the property for foreclosure, that's a mixed message. It's absolutely a mixed message. How can you rescind an acceleration if there is actually no period of time where it is actually rescinded? Because they included the rescission in a re-acceleration. It's a simultaneous, and that's just absurd. The Wilmington case, sorry, we have the, is it Wilmington from our court? It is. Wilmington v. Robb, 2018 decision from our court? It is the Wilmington v. Robb case. Does that support your position on the simultaneous? No. Acceleration or? That particular case is the one that held that if you abandon an acceleration, you have to send a new notice of intent to it. And I reserve, I have five minutes reserved for a moment. Thank you, counsel. Good afternoon, and may it please the court. Daniel Durrell for the Appelese. This appeal hinges on whether the four-year statute of limitations has expired on the Appelese right to foreclose under a Texas real estate lien. The district court correctly determined that it had not expired, and there were two independent reasons that supported that conclusion. Those two reasons frame the issues on appeal. The first issue is whether a notice that provided, and I quote, the servicer hereby rescinds all prior acceleration notices effectively rescinded acceleration under Section 16.038 of the Texas Civil Practice and Remedies Code. The second issue is whether Appelese alternatively abandoned acceleration by subsequently sending one notice of delinquency in five monthly statements, all that requested less than the full balance of the loan. These exact issues were recently addressed by the Houston Court of Appeals in PHH. Do I understand also the letters also scheduled the property for foreclosure? The rescission letter, yes, was a notice of acceleration that then also included a foreclosure sale notice. Are those two things inconsistent, to rescind the acceleration and then to foreclose based on acceleration? They're not, Your Honor. And the reason that they are not is because the letter is rescinding all prior accelerations, which Section 16.038 allows you to do, and then it is reaccelerating the loan. So there are two separate events that are occurring here. One is a rescission of a prior acceleration. The second is the acceleration of the loan again. And so they're not inconsistent. Section 16.038 allows the lender to do this. Okay. So your theory is it's the simultaneous rescission of acceleration and acceleration, reacceleration. Yes. You can do both. You'll admit that, you know, maybe this is allowed, maybe it's not, but you'll admit that that essentially nullifies the 4-year statutory limit. Any lender using this stratagem can essentially abolish the 4-year statute. A lender could do that. It's a stupidly written law, is what you're saying. It's a problem. It's an argument for the legislature, not for this court. That's the way 16.038 of the Texas Civil Practice and Remedies reads. It allows lenders to do this. What's your best case from Texas, the Texas court, that says that such a notice of rescission plus simultaneous reacceleration or acceleration is valid under the statute? I have one that is identical, exactly on point, and that's what I was about to refer to, and that's PHH Mortgage Corporation v. Aston. That was decided after the briefing. That's the recent Houston Court of Appeals. That's correct. Why shouldn't we or should we certify this to the Texas Supreme Court? I don't think so. This is their mess, isn't it, not ours? The Texas Supreme Court declined the petition for review in Aston and then also denied the motion for rehearing. Well, they can always decline the certification. Is it your position that we should not certify it and see what they'll say? I don't think this is a case. I assume this would help your client understand what their potential stratagems for the future are or not. I don't think this is a case for certification because I think that the statute is very clear and application of the facts to that statute is very clear, and that is what the PHH Mortgage Corporation v. Aston opinion. You know, we have some case law that is certainly in tension with that recent ruling. Why not resolve it? That's what supreme courts are for. Your Honor, I'm not familiar with any case law that's actually in contention with the Aston decision. This is the only court to ever address this issue. There is significant opinion from this court in Juttera v. Juttera Corporation v. U.S. Bank that actually supports the decision that the Houston Court of Appeals reached in Aston. And, Your Honor, Judge Ho, you were on that panel that issued that decision in Juttera Corporation. There, the court made an eerie guess. They held that a borrower's debtor mineral reliance could not— I'm sorry to interrupt, but what about Wilmington Trust? I thought that case at minimum seems to be in tension with this notion of simultaneous rescission and re-acceleration. To me, I see a split that the Supreme Court should resolve. I think that can be explained. So Wilmington v. Rob decided that if you abandon acceleration, which this was under the principles of abandonment, not rescission, that you were required to send a new notice of intent before you accelerated, right? That issue is not before the court. Rob did not decide whether a rescission was valid just because you put the rescission language within an acceleration notice. That issue was not decided by Rob. You're saying it wasn't before the court. Exactly. It was dicta. It was never before the court. I'm not saying that it's not dicta because they decided that was correct based on the principles of abandonment. So that is— So we're not bound by Wilmington, but we're certainly not bound by Houston Court of Appeals either. Your Honor, I would argue that this court is bound by the Houston Court of Appeals based on the eerie doctrine. The court should look, and there's precedent from this court that says you must look toward the intermediate appellate courts for a decision if the Texas Supreme Court has not decided the issue. The Texas Supreme Court has not decided this issue. There is only one— The problem was if there's sort of a trend line, that the overwhelming pattern is one way, so the state Supreme Court doesn't need to resolve it because it's an easy issue. That's not what we have here. There's only one opinion, yes. There's only one opinion that's directly on point. That's correct. It doesn't bind us. I mean, I think the law is that what we need to do is predict what the Texas Supreme Court is going to decide. The evidence, as you say, you have a directly on point court from an intermediate court. I understand your position, Mr. Jackson, and I'm always sympathetic to lawyers in this position. What you really want to say is, Your Honor, you got that Houston Court of Appeals case, which, if you're going to make an airy guess, would indicate that you ought to rule for me. But if you're inclined to rule against me, go ahead and certify it to the Texas Supreme Court, and I can live to fight another day. You're not going to say that, but I understand— I have said that. That's probably the best answer. So my advice is to move on with your argument. So that's a rescission point. If you win on that point, I assume you just win. If we disagreed with you on that point, I understand Mr. Jackson has an alternative argument in that there's a fact issue about intent to abandon, and if you could respond to that. Absolutely, Your Honor. Abandonment would alternatively support affirming the district court summary judgment here, and you would not even have to get into this issue on rescission. Abandonment of celebrations is basically the common law equivalent of the statutory rescission. It's been applied by Texas courts for well over a century. This Court is no stranger to its application. Judge Graves, you wrote the opinion in Boren that is probably the most cited case on this issue in Fifth Circuit jurisprudence. There, that Court made an airy guess and said that if you send a notice that requests less than the full amount of the loan, that unequivocally in that case, unequivocally manifests an intent to abandon acceleration. This Court has taken that position in multiple cases since then. But first I want to address the Houston Court of Appeals' decision in Aspen. They also reached the same conclusion, and they reached the same conclusion on an identical delinquency notice that this Court is in the record for this case, where that delinquency notice requests less than the full amount of the balance, and I believe states that the borrower can bring your loan current, and it stated your account has not been referred to an attorney for foreclosure. Now, that is in the record at 1097, and that is the same delinquency notice was at issue in Aspen, and the Houston Court of Appeals said that is abandonment of a prior acceleration. It is completely inconsistent with treating the loan as being accelerated. And now turning to decisions from this Court, Boren and its progeny support abandonment in this case, because not only did the lender send this delinquency notice, it also sent five monthly statements within four years that gave the borrowers the same opportunity to cure the default. In each one of those monthly statements, there was a maturity date specified, and it was the original maturity date in those monthly statements. There was no reference to an accelerated balance. In other decisions from this Court, they have not used monthly statements to evidence abandonment or at least show that it creates a fact issue, because there was inconsistent language. It would say that your loan has been referred to foreclosure, or it might say your loan is accelerated, or the monthly statement in some cases had an accelerated balance listed on it. That's not this case. The monthly statements in this case, there is nothing inconsistent with abandoning acceleration. There's no referral to foreclosure, nothing in there about an accelerated balance. And so there are multiple cases that support abandonment in this case. The first one I would draw your attention to is this Court's 2018 Procurement Opinion in Auckland Loan Servicing v. REO AM LLC. There, the Court held that nine monthly statements sent to the borrowers requesting less than the full amount of the loan, just like the five monthly statements sent in this case, abandoned a prior acceleration. Judge Duncan, you were on that panel in that case. The Court reached that same conclusion with respect to monthly statements in Alvarado v. U.S. Bank, and that was three years before this Auckland decision. The second case is this Court's 2022 Procurement Opinion, very recent, and that's Cross v. Bank of New York Mellon. Again, Judge Duncan, you were on that panel. The Court held that a letter seeking to collect less than the full balance of the borrower's loan and also reflect the loan's original maturity date, just like the monthly statements in this case, abandoned acceleration. There's no issues of fact. It was a manifestation of an intent to abandon acceleration. And there's other cases as well. I will leave it at those two. I think they sufficiently address the abandonment issue. Again, the Court has determined that fact issues preclude a summary judgment. All had the inconsistent statements that I referred to earlier. You will not find that in the record here. Because the five monthly statements and the delineating quickening notice timely abandoned the February 2, 2016 acceleration issue, the appellees request that the Court affirm the district courts take nothing summary judgment on that alternative ground to the extent it either decides the rescission argument against the appellees or chooses just not to address it, period. There are a few other things I wanted to address within the appellant's argument. And that was that a notice of acceleration set after an abandonment would be inconsistent. And that's what the evidence that appellants pointed this Court toward, that essentially they were talking out of two sides of their mouth. That's simply not true. Let's think about an acceleration notice. Why would a lender be sending a new acceleration notice if they didn't think that they had abandoned acceleration before? What would be the point? That's not inconsistent with abandonment. That is completely consistent with abandonment because they probably sent monthly statements or maybe they sent a delinquency notice that requested less than the full amount of the loan. Therefore, why do they do that? They want to make sure that they have an accelerated loan whenever they foreclose. Those acceleration notices, which was the only evidence that opposing counsel pointed this Court to for the fact issue, is no evidence at all of an inconsistent position with the abandonment argument made to this Court. Are you able to tell me, just as a general matter, if this sort of strategy, if that's the right word, this strategy of rescinding the prior acceleration and simultaneously reaccelerating, is that a standard practice? Is it a new practice? I don't know if it's a standard practice. I have seen it. I don't see it, I guess, that often. I think it's some foreclosure counsels taking a pretty reasonable approach on what Section 16.038 states, and that's where I think this Court can actually draw. The Court doesn't need to get to this issue because we're not talking about whether the acceleration was effective because that really is kind of the issue that Rob decided that's not before this Court because if you think there's two issues, one, was the rescission valid? That's before this Court. Two, was the loan reaccelerated within that notice? That's the issue that Rob decided. That issue is not before the Court because nobody is claiming that that acceleration notice was invalid, or valid for that matter because it doesn't matter. At this point, all we need to talk about is whether that notice validly rescinded the acceleration, and it did because It's not implicit when you find a valid reacceleration? It's not sort of presumed that you don't have a valid reacceleration unless the previous acceleration was rescinded? Well, if you had a — you wouldn't have a valid reacceleration if the loan was already accelerated, right? I mean, I don't think so, as much as at least this case is all about the statute of limitations. You need to know when the statute started. Correct. So if the loan was already accelerated, then you can't have a reacceleration of an already accelerated. Right. So that's why the rescission comes into play. That's what I'm saying. You know, at least if I understood your argument, you know, a previous decision of our Court was only about reacceleration. My response is doesn't that presume a predicate of rescission? It does, and it presumes an abandonment that had taken place. But so the decision in Rob was whether the foreclosure — I thought the whole point of our decision was, quote, re-notice is required after acceleration is rescinded, which seems to foreclose your theory of simultaneity. So let's talk about where those loans were in the places in each one of those cases. So in Rob, if I recall, there was already a foreclosure that had taken place. And so the argument was there couldn't be — there was no acceleration in that case just because they say it wasn't preceded by an intent to accelerate. And because there was no intent to accelerate, that acceleration notice was invalid. Therefore, the foreclosure sale that had already occurred was invalid. Well, we haven't gotten to the point of a foreclosure sale. No one is arguing that this acceleration is valid or invalid because no one has used it yet to foreclose. So that's why that issue is different here because it's not before the Court whether that's valid. If it was before the Court, Judge, I would say that the Court in Rob did not address the language that is in 16.038 of the Texas Civil Practice and Remedies Code because at that time it didn't exist. The Court was looking at a notice of default that was before the Texas legislature passed 16.038, which would have been in 2015. So it's a more common law principle. Exactly. What's in the statute that suggests an abrogation of the existing common law? Sure. So Section D says a notice served under this section does not affect a lien holder's right to accelerate the maturity date of the debt in the future, nor does it waive past defaults. And so that is language that was not considered by the Court in Rob with respect to statutory rescission. So maybe abandonment would require the two-step intent. That's what the Court held, intent plus acceleration. But here the argument would be if it was before the Court, which it's not. But it would be that Section 16.038 changed that rule with respect to statutory rescission. The Texas legislature allows lenders to do this because it says that essentially by rescinding acceleration you're not waiving a past default. You don't have to go through that process again to re-notice acceleration, to re-notice the intent because you've already done it. They're already in default. You're not waiving the past default. You're not waiving the prior notice. It's already been done. All you have to do is re-accelerate the loan. Whether that's good policy or not, that is, again, for the legislature to decide, and that is what they've decided. Unless this Court has any further questions, I would conclude by stating that on the rescission issue the statute is clear. The Court can look to the Juttera opinion on deciding an eerie question here. The statute requires it to be writing. You've got to say that it rescinded acceleration. You've got to mail it. All those three boxes are checked here. The Court would have to judicially create an exception. The Court refused to create a judicial exception in Juttera. It said that that's not within the province of the Court. They even quoted the Texas Supreme Court and said, Enforcing the laws written is a Court's safest refuge in matters of statutory construction, and we should always refrain from rewriting the text that the lawmakers chose. That is this case here on rescission. With respect to abandonment, this Court has its own precedent, starting with Boren, that it can apply in this case to find that the lender effectively abandoned acceleration. There are no fact issues. So for these reasons, the appellees request that the Court affirm that district courts take nothing summary judgment. Thank you. Thank you, counsel. Thank you. Rebuttal. I'll start with the statutory rescission question. This Court can look to Section 16.038D. That says a notice served under this section does not affect a lien holder's right to accelerate the maturity date of the debt in the future, nor does it waive past defaults. You can zero in on that word future. The statute presumes that a rescission will be effective because it allows the lender to accelerate again in the future. They didn't follow the statute, or you can use that language in the statute to find that the simultaneous rescission and reacceleration, it created no point in time where the loan was actually rescinded and that there was no future for the loan to be accelerated again. Even if you find that they did technically. That's interesting. I was thinking about that, too, the word future and what does that mean. Wouldn't that mean that the simultaneous acceleration is ineffective? You can't do it at the same time, rescind plus reaccelerate. You can't do it on the same notice. I think that's right. But does that necessarily mean that the rescission of the prior acceleration is ineffective? I think it necessarily has to mean that, too. The statute is all about rescission, and the statute presumes that there is going to be a future where the loan could be reaccelerated after that rescission, and a simultaneous acceleration with a rescission just would completely nullify Section D, and you should always, rules of statutory interpretation would ask that you give effect to Section D. It would nullify Section D because? Because there would be no future acceleration because the acceleration was simultaneous with the rescission. Section D would be meaningless if you have. . . When you rescind one letter, you say you're rescinding the previous acceleration. Right, but then Section D reserves the right of the lender to reaccelerate in the future. That implies some period of time where the rescission is effective. Immediately. I'm immediately rescinding one, and I'm immediately accelerating. Right, so there would be no future in which the lender could. . . The future is from this acceleration period all the way out going forward. That's what the future is, isn't it? That's not the way I read Section D, respectfully. All right. So to circle back to the PHH case. Before you do that, I'm not sure you answered Judge Duncan's question. I take your point that in the future means in the future. I get that. I think what Judge Duncan is asking, in any event, what I'm asking is doesn't that just mean that the attempt to reaccelerate is void? It doesn't necessarily mean that the rescission is void. Well, I'm just saying sort of D is baked into the cake of this whole thing. And so I understand that argument. I respectfully disagree that that. . . I'm just asking. I'm not sure I hear what you're saying. Since D is sort of baked into the cake of this statute, and it presumes a future where the loan could be reaccelerated, it necessarily does not allow for a simultaneous reacceleration. I think you could interpret it that way and apply it that way. But even if you rule that they did follow the statute, it is absurd. And I know it's a high burden to meet, to overcome a statute on the grounds of absurdity. But you would essentially be completely defeating the purpose of the statute of limitation, and counsel more or less admitted that it could allow them to defeat the whole purpose of the statute of limitation. Well, let's think about that. So I send a notice on day one that says I'm rescinding the prior acceleration. I can do that. And then the next day I send a, and now we're accelerating again. Can you do that? No, because you have to send a notice of intent to accelerate followed by the new acceleration as the Rob Court held. If you do that, then you can keep doing it. But here's what you could do. You could accelerate, wait until three years, 11 months, and 29 days, send a notice of rescission, and reaccelerate simultaneously and do the same thing three years, 11 months, and 29 days later. Even accepting your theory against simultaneity, there's nothing stopping Wills Fargo and Beals from performing as you want them to and still nullifying the statute in your view. Every step you want them to take, they'll take. Instead of a day later, it'll be a week later or a month later. But the point is they can, under the statute as you read it, engage in accelerations and rescissions and then fully robust reaccelerations in perpetuity. At least until the maturity of the date of the thing. Of course, right, right, right. In other words, the nullification of the four years is kind of baked into the cake, as you say. The nullification of the four years? You mean the statute of limitations? You're complaining that lenders can always get rid of the four years in effect, but I think under your theory they can still do that. They just have more paperwork to do. They could keep it perpetually accelerated through the date of maturity, but the whole point of the statute of limitations is that if it's accelerated for four years or more, it's void. No, they pull it down, then they redo it. Oh, and then they redo it. I'm not saying it's devastating your position. I'm just saying anybody can nullify even under your theory. That's my only point. I think I understand what you're saying. Yes, they could rescind, reaccelerate, rescind. We still need to answer this case. Right. And I had more to discuss, but I see that I am out of time. We request the court to reverse the district court and remand for a trial. Any reason we shouldn't certify on your end? Certification. I would welcome certification. The PHH case from the Houston Court of Appeals, that was one of my cases, so I'm very familiar with that case. That court actually issued an amended opinion on rehearing where they actually tried to address the absurdity argument a little bit more. I think it's very unconvincing because they essentially ignore the public policy behind the statute of limitations. And the Supreme Court denied it, but as you know, if they wanted to make PHH binding law, they could have refused the petition under their rules, but they denied it, meaning that they simply didn't grant the petition for review. Maybe they didn't find that the Houston Court of Appeals was correct in its application of the law. Thank you. All right. Thank you.